UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE CO.,<br>as subrogee of<br>SCHNABEL FOUNDATION CO., INC.,<br><br>          Plaintiff,<br><br>          v.<br><br>EQUIPMENT CORPORATION OF<br>AMERICA, et al.,<br>          Defendants. | Civil Action 07-01788  (HHK) |

**MEMORANDUM OPINION**

Invoking this Court's diversity jurisdiction, Liberty Mutual Insurance Company ("Liberty Mutual") as subrogee of Schnabel Foundation Company, Inc. ("Schnabel") brings this action against defendants Equipment Corporation of America ("ECA"), Bauer Maschinen GmbH ("Bauer"), and Pileco, Inc. for property damages sustained to a 18H rotary drill rig ("Drill Rig") manufactured by Bauer and leased and sold by ECA under theories of strict products liability sounding in tort and breach of warranty sounding in contract.  Before the Court is ECA's and Bauer's motion for summary judgment [#49] on both the strict products liability claim and breach of warranty claim asserted by Liberty Mutual.  Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion for summary judgment should be granted in part and denied in part.

**I.  BACKGROUND**

Bauer is a German company that manufactures certain equipment, including the Drill Rig. In January 2004, Bauer authorized ECA to market, sell, and rent certain products manufactured

by Bauer, including the Drill Rig. In April 2005, Schnabel leased the Drill Rig from ECA. The Lease Agreement ("Lease Agreement") disclaimed all warranties, express and implied, including any implied warranty of merchantability. An additional writing to the Lease Agreement ("Purchase Option") provided that the renter has an option to purchase the Drill Rig at any time during the rental period.[1] Schnabel exercised the Purchase Option in December 2005. Unlike the Lease Agreement, neither the Purchase Option nor the invoice for the sale of the Drill Rig ("Invoice") contained a similar warranty disclaimer. Defendants Bauer and ECA maintain that the Purchase Option was one term of the Lease-Purchase Agreement ("Lease-Purchase Agreement"), while Liberty Mutual argues that the Purchase Option is a separate agreement from the Lease Agreement. Thus, the parties disagree as to whether the terms of the Lease Agreement apply only to the rental of the Drill Rig, or if they also apply to the sale of the Drill Rig.

In December 2006, Schnabel was using the Drill Rig in Washington, D.C. At the end of the day on December 11, 2006, the work crew "turned off the engine and locked the cab of the Drill Rig." (Pl.'s Am. Compl. ¶ 12.) The Drill Rig was not used the following day, but at 3 a.m. on December 13, 2006, the Drill Rig was on fire. Liberty Mutual contends that the Drill Rig was damaged beyond repair. Further, Liberty Mutual asserts that the fire caused fuel and/or hydraulic fluid to spill that was subsequently cleaned up by Schnabel, and which required the disposal of contaminated material that was paid for by Liberty Mutual. As subrogee of Schnabel, Liberty

---

[1] On the basis of the record, it is unclear whether this writing was provided before or after the parties consented to the Lease Agreement. The writing, captioned "Telefax," indicates it was sent on April 11, 2005. (Defs.' Mot. for Summ. J., Ex. A at 3.) The Lease Agreement was signed by ECA on April 1, 2005, but it is unclear on what date Schnabel assented to the Lease Agreement. (*Id*.)

Mutual seeks $745,000 in damages sustained to the Drill Rig, as well as consequential damages associated with the clean up under theories of strict products liability and breach of warranty.

## II. ANALYSIS

ECA and Bauer move for summary judgment on both Liberty Mutual's strict products liability claim and breach of warranty claim alleging that: (1) strict liability and breach of the implied warranty of merchantability are considered a single tort, (2) recovery under this single tort claim is precluded by the economic loss rule, and (3) even if the two claims are not considered a single tort, the Lease-Purchase Agreement disclaimed any express or implied warranties.[2]  This memorandum opinion will address each of the defendants' arguments in turn.

As a preliminary matter, the parties disagree as to which state's law should apply to this case.  Bauer and ECA assert that District of Columbia law should apply because the injury-causing conduct, the fire, occurred in the District of Columbia.  Liberty Mutual contends that Pennsylvania law should apply because the parties' relationship centered in Pennsylvania.

---

[2] Under Federal Rule of Civil Procedure 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*. at 255.  The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

When deciding state law claims in federal court where jurisdiction is based on diversity, the court will "apply the choice-of-law rules of the jurisdiction in which" it sits. *Nnadili v. Chevron USA, Inc.*, 435 F. Supp. 2d 93, 97 (D.D.C. 2006) (quoting *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997)). The court is not bound to decide all the issues presented in a claim under the law of a single state, but instead must examine the various interests of the states with regard to each distinct issue in the litigation. *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 566 A.2d 31, 40 (D.C. 1989). Before applying the District's choice of law principles, however, "the court must first determine if there is a conflict between the laws of the relevant jurisdictions." *Young Women's Christian Ass'n v. Allstate Ins. Co.*, 275 F.3d 1145, 1150 (D.C. Cir. 2002). "Only if such a conflict exists must the court then determine, pursuant to the District of Columbia choice of law rules, which jurisdiction has the 'more substantial interest' in the resolution of the issues." *Id.* As explained below, the Court concludes that no conflict of law exists between Pennsylvania and the District of Columbia on the relevant issues, and therefore need not analyze which jurisdiction has a more substantial outcome in the litigation.

A. **Liberty Mutual May Bring its Strict Liability and Breach of Implied Warranty Claims Separately Against ECA, but May Bring Such Claims Only as a Single Tort Claim Against Bauer.**

ECA and Bauer contend that strict products liability and the breach of implied warranty of merchantability are considered one tort under District of Columbia law and, therefore, Liberty Mutual cannot bring any contract claims against ECA and Bauer. Liberty Mutual rejoins that under Pennsylvania law, products liability claims and implied warranty claims are independent. The parties are each partially correct.

ECA and Bauer are correct that the District of Columbia construes an action for strict products liability and breach of the implied warranties of merchantability as a single tort. *See, e.g.*, *Wainwright v. Washington Metro. Area Transit Auth.*, 903 F. Supp. 133, 140 (D.D.C. 1995) ("Breach of implied warranty and strict liability in tort are expressions of a single basic public policy as to liability for defective products."); *Bowler v. Stewart-Warner Corp.*, 563 A.2d 344, 347 (D.C. 1989) (granting new trial where the trial judge instructed the jury in both strict liability and implied warranty of merchantability because the two claims represent one tort); *Payne v. Soft Sheen Prods., Inc.*, 486 A.2d 712, 720 (D.C. 1985) ("[W]here there are no issues unique to warranty, a claim of strict liability in tort is effectively made out in a complaint for breach of warranty.").

ECA and Bauer, however, misconstrue this standard and apply it to parties in privity of contract. Under District of Columbia law, the court will apply this rule only to cases in which a third party is bringing an action against a manufacturer of a product and thus there is no privity of contract. For example, in *Potomac Plaza Terraces, Inc. v. QSC Prods., Inc.*, 868 F. Supp. 346, 350, 354 (D.D.C. 1994), the court permitted a breach of implied warranty claim to go forward because the plaintiff and the defendant had a contractual relationship.

Pennsylvania law similarly distinguishes between strict products liability and breach of implied warranties based on the position of the plaintiff in the case. Where the plaintiff is not in privity with the defendant, Pennsylvania courts construe an action for breach of implied warranties as one in tort. *See Hahn v. Atlantic Richfield Co.*, 625 F.2d 1095, 1104 (3d Cir. 1980) ("[T]he Supreme Court of Pennsylvania has been moving in the direction of viewing non-purchaser actions filed under the UCC as strict liability actions in tort, rather than as contract

actions."). Yet where the plaintiff and defendant are in privity, Pennsylvania law permits the plaintiff to pursue strict liability claims and implied warranties claims separately. *See, e.g.*, *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 117-18 (3d Cir. 1987) (applying Pennsylvania law and concluding that plaintiffs who are in privity with defendant may bring a contract action for breach of implied warranties); *Hammermill Paper Co. v. C.T. Main Const., Inc.*, 662 F. Supp. 816, 818 (W.D. Pa.1987) (concluding that the plaintiff in privity with the defendant had no right to recovery in tort because damages were purely economic, but could sustain a cause of action for breach of implied warranties).

Accordingly, there is no conflict of law between the District of Columbia and Pennsylvania on this issue, and the Court must permit Liberty Mutual's claim for breach of warranty to move forward independently against ECA because Schnabel and ECA were in privity of contract. The Court may not permit a breach of warranty claim to move forward against Bauer, however, because Schnabel and Bauer were not in privity of contract. Liberty Mutual may only bring a claim in tort against Bauer.

**B.    The Economic Loss Rule Precludes Liberty Mutual's Strict Products Liability Claims Against ECA and Bauer.**

Defendants argue that Liberty Mutual's strict liability tort claim is barred by the economic loss rule. The economic loss rule prevents a party from recovering on a strict products liability claim where the only damage is to the product itself. *Aloe Coal Co.*, 816 F.2d at 118; *Potomac Plaza Terraces, Inc.*, 868 F. Supp. at 354. Both the District of Columbia and Pennsylvania have adopted the economic loss rule. *See Eagle Traffic Control v. Addco*, 882 F. Supp. 417, 419 (E.D. Pa. 1995) (stating there is no recovery under strict liability "where a product malfunctions

because of an alleged defect in the article and causes damages to the product itself and consequential damages . . . but the malfunction causes" no personal or property injury to the plaintiff) (internal quotations and citations omitted); *Potomac Plaza Terraces, Inc.*, 868 F. Supp. at 354 (applying the economic loss doctrine to preclude plaintiff from recovering for damages to the product itself); *REM Coal Co. v. Clark Equip. Co.*, 563 A.2d 128, 132 (Pa. Super. Ct. 1989) ("[W]e adopt the standard . . . under which recovery in tort is barred in product liability actions . . . where the only damage alleged is to the product itself . . ."). Therefore, no conflict of laws exists.

   Liberty Mutual can recover based on strict products liability only if it proves that the damages Schnabel incurred go beyond damages to the Drill Rig itself and consequential damages flowing therefrom. Liberty Mutual does not contend that Schnabel suffered property damages beyond that inflicted on the Drill Rig itself. It only asserts consequential damages associated with cleaning up a fuel spill and disposing of contaminated material. (Defs.' Mot. for Summ. J., Ex. C at 1.) Liberty Mutual has failed to meet its burden under the summary judgment standard to produce evidence that would permit a reasonable jury to find in its favor; it has alleged no damages other than to the Drill Rig itself, nor has it argued that the costs associated with cleaning up a fuel spill and disposing of contaminated material constitute other property damage. Therefore, the Court grants ECA and Bauer's motion for summary judgment on Liberty Mutual's strict products liability claim. Because Liberty Mutual may only bring a strict products liability claim against Bauer, the Court dismisses Bauer from the case.

**C.      Liberty Mutual May Proceed on Its Breach of Warranty Claim Against ECA.**

ECA contends that Liberty Mutual cannot prevail on a breach of implied warranty claim because the Lease-Purchase Agreement disclaimed any implied warranties. Liberty Mutual rejoins that there was no Lease-Purchase Agreement and that the disclaimer of any warranties only applied to the lease of the Drill Rig, and not the sale of the Drill Rig. The Court concludes that there is a genuine dispute of material fact regarding whether the terms of the Lease Agreement applied to the sale of the Drill Rig.

The Lease Agreement was signed by ECA on April 1, 2005. Although the copy in the record does not contain a signature by Schnabel, Liberty Mutual does not contend there was no contract for rental. Therefore, the court will construe the Lease Agreement as a valid contract. The Lease Agreement contains an integration clause stating that "the writing contains the entire agreement between the parties hereto, and any representation or agreement not contained herein shall be of no force or effect whatsoever." (Defs.' Mot. for Summ. J, Ex. A at 8.) The Lease Agreement also contains a warranty disclaimer, stating:

> **WARRANTY**. LESSOR MAKES NO WARRANTIES, EITHER EXPRESS OR IMPLIED, AS TO ANY MATTERS WHATSOEVER, INCLUDING WITHOUT LIMITATION, THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, OR ITS FITNESS FOR ANY PARTICULAR PURPOSE.

(Defs.' Mot. for Summ. J., Ex. A at 8.) The Lease Agreement does not contain the Purchase Option; a fax from Bauer to ECA, sent in April 2005 and captioned "Quotation" states certain Rental Terms and Conditions, including the Purchase Option, which grants the renter the right to purchase the Drill Rig at any time during the rental period. (Defs.' Mot. for Summ. J., Ex. A at 5.) The record does not show whether ECA sent the fax before or after the execution of the

Lease Agreement or whether Schnabel received a copy of this fax, though Liberty Mutual states the Quotation was faxed to Schnabel in April 2005. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 2.) As such, it is unclear whether the Court should construe the Purchase Option as a term that supplements, and therefore is part of, the Lease Agreement or as a completely separate agreement.

The record contains a genuine dispute of material fact as to whether the ECA disclaimed the implied warranty of merchantability for the sale of the Drill Rig. The Invoice indicates that Schnabel purchased the Drill Rig in December 2005 for $714,800. (Defs.' Mot. for Summ. J., Ex. A at 1.) The Invoice does not reference back to the Lease Agreement in any way, nor does the Invoice contain any disclaimer of warranties. There is no evidence before the Court that the terms of the Lease Agreement apply to the sale of the Drill Rig except for ECA's and Bauer's allegations that the rental and subsequent sale of the Drill Rig constitute one entire agreement, the Lease-Purchase Agreement. The Lease Agreement does not state that its terms would apply to the sale of the Drill Rig, nor does the Quotation that contained the purchase option provision state that the terms of the Lease Agreement would apply to the sale of the Drill Rig. Moreover, Liberty Mutual contends that the terms of the Lease Agreement do not "survive any subsequent sale of the [D]rill [R]ig." (Pl.'s Opp'n to Mot. for Summ. J. at 2.) Therefore, because there is a genuine dispute of a material fact, the Court denies summary judgment on Liberty Mutual's breach of implied warranty claim against ECA.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that it should grant ECA and Bauer's motion for summary judgment with respect to Liberty Mutual's tort claim, grant summary

judgment to Bauer on Liberty Mutual's contract claim and deny summary judgment to ECA on Liberty Mutual's contract claim. An appropriate order accompanies this memorandum opinion.


                                                Henry H. Kennedy, Jr.
                                                United States District Judge